IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES FREEMAN,                 :        Case No. 01:12 CV 2557

     Petitioner,               :

vs.                              :

TERRY A. TIBBALS, WARDEN,        :
                                          MAGISTRATE'S REPORT AND
                                 :        RECOMMENDATION
     Respondent.

## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, Respondent's Answer/Return of Writ and Petitioner's Traverse (Docket Nos. 1, 6 & 9).  For the reasons set forth below, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL BACKGROUND.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, the determination of factual issues made by a

State court shall be presumed to be correct.  28 U. S. C. § 2254(d)(1) (Thomson Reuters 2013).

This statutory presumption of correctness extends to factual findings made by state appellate

courts on the basis of their review of trial court records.  *Hardaway v. Withrow,* 305 F.3d 558,

563 (6th Cir. 2002) *cert. denied*, 123 S. Ct. 2078 (2003) (*citing Brumley v. Wingard*, 269 F.3d

629, 637 (6th Cir.2001) (*citing Sumner v. Mata*, 101 S.Ct. 764, 768-769 (1981)).  The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence.  *Id.* (*citing* 28 U.S.C. § 2254(e)(1)).

During the trial, the State presented testimony from several witnesses, all siblings and the

children of "Maria."   *State v. Freeman,* 2010 WL 3168744, *2 (2005) (unreported).   The

children ranged in age from six to ten years old, with P.S. being the oldest girl, then her sister,

I.S., followed by brothers V.S. and T.S., respectively.  *Id.*  Their father died years earlier, and

during the time of the alleged offenses, they resided in a Cleveland home with their mother and

Petitioner.  *Id.* .

Petitioner met Maria in September 2007 through his job as a security officer at a grocery

store where the family shopped.  *Id.*  He began dating Maria and visited her home after work

frequently.  *Id.*  During his visits, he would often play a video game on PlayStation® with the

family.  *Id.*  Each of the four children and Maria testified that the Petitioner made them play the

game while naked in Maria's bedroom and Maria permitted this to occur[1].  *Id.*  Maria testified

that there were at least two occasions when her daughters were allowed or told to watch as she

and Petitioner engaged in sexual intercourse.  *Id.*  According to Maria, Petitioner "wanted to

---

[1]

    Maria was charged as a codefendant on the counts of disseminating matter harmful to juveniles.  *Sate
v. Freeman*, 2010 WL 3168744, at *1, fn.2.  Maria entered a guilty plea prior to Petitioner's trial and, as part
of her plea, testified against him.  *Id.*

teach them what sex was about and how dangerous it was." *Id*.

P.S. and I.S. testified, and Maria admitted, that Petitioner required P.S. and I.S. to remove his clothes when he came over after work. *Id*. According to Maria, Petitioner felt "it was a good job for the girls to be touching him." *Id*. She said that Petitioner would follow the girls to their bedrooms naked but would not allow her to go inside. *Id*. Maria did not interfere because Petitioner "manipulated her," turned her kids against her, and told her he was smarter because he had a college degree. *Id*.

P.S. and I.S. testified to numerous sexual assaults committed upon them by Petitioner. They stated that the assaults occurred in various places in their home, including their bedrooms, the bathroom, and Maria's bedroom. *Id*. Both girls also testified that Petitioner threatened them not to tell anyone. *Id*. Further, both brothers, V.S. and T.S., testified that they saw Petitioner sexually assault their sisters. *Id*. The brothers also testified that Petitioner touched the boys' private parts, and that Petitioner threatened them not to tell anyone. *Id*.

Maria denied ever seeing Petitioner sexually assault or inappropriately touch any of her children. *Id*. Although I.S. told her otherwise, Maria said she did not believe her and thought she was "playing." *Id*. But when P.S. also reported sexual abuse to another relative in March 2008, Maria took her daughters to the hospital and reported it. *Id*. The children were then removed from Maria's custody and placed with a paternal aunt, where they remained at the time of trial. *Id*.

The investigating detective took a written statement from Petitioner after a waiver of rights. *Id*. The statement contains contradictory statements but also contains certain admissions. *Id*. In particular, Petitioner stated that he had his mouth on P.S.'s vagina twice, each time in the presence of her mother. *Id*. He admitted he tried to insert his penis into P.S.'s vagina on one

3

occasion.  *Id.*  He admitted he had his mouth on I.S.'s vagina twice, but denied ever trying to insert his penis into I.S.'s vagina.  *Id.*  His statement also contained an admission to having sex with Maria in front of P.S. and I.S. on more occasions than five but less than ten occasions.  Id.

A forensic nurse testified about her physical examinations of I.S. and P.S.  *Id.*  She reviewed the medical records containing narratives that essentially corroborated the trial testimony of these victims.  *Id.*  The exam revealed petechiae[2] in both girls' throats, indicative of something being stuck inside.  *Id.*  I.S. also had evidence of a previous vaginal tear.  *Id.*

A forensic scientist employed by the Bureau of Criminal Identification and Investigation analyzed physical evidence obtained from rape kits conducted on the girls.  *Id.*  I.S.'s vaginal samples tested positive for seminal fluid and Amylase (an enzyme indicative of the presence of saliva) was found on both girls' underwear.  *Id.*  No semen was detected from P.S.'s rape kit. Later testing could not exclude Petitioner as a contributor to the DNA profile obtained from I.S.'s underwear.  *Id.*  There was not enough DNA from P.S.'s underwear to conduct a similar analysis. *Id.*  Another forensic scientist was unable to make a determination as to the DNA.  *Id.*

### III. PROCEDURAL BACKGROUND.

### 1.  INDICTMENT IN CRIMINAL CASE NO. CR 508859-A

During the January of 2008-term, the Cuyahoga County Grand Jury returned the following indictment, charging Petitioner with engaging in unlawful sexual contact with Maria's children between September 2007 and March 2008:

1.  Nineteen counts of rape, a violation of OHIO REV. CODE § 2907.02(A)(1)(b), with the specification that the victims were under the age of 13 years; and
2.  Ten counts of "disseminating obscene matter to juveniles," a violation of OHIO

---

[2]

Minute hemorrhagic spots, of pinpoint to pinhead size, in the skin, which are not blanched by pressure.  STEDMAN'S MEDICAL DICTIONARY 308720 (27th ed. 2000).

REV. CODE § 2907.31(A)(3) (Docket No. 6-1, pp. 4-32 of 423).

2.    INDICTMENT IN CRIMINAL CASE CR 518221-A

During the September 2008-term, the grand jurors of the County of Cuyahoga returned an indictment charging Petitioner with two counts of gross sexual imposition, a violation of OHIO REV. CODE § 2907.05(A)(4), which arose from conduct in September 2008 (Docket No. 6-1, pp. 33, 138 of 423).

3.    THE TRIAL, CONVICTION AND SENTENCING.

Criminal cases numbered CR 508859-A AND CR 518221-A were consolidated for purposes of trial (Docket No. 6-1, p. 138 of 423).  The jury found Petitioner guilty on all counts, and on January 21, 2009, Judge Richard J. McMonagle imposed the following sentences:

1.    Life without parole as to Counts 1 through 19;
2.    Eighteen-months as to Counts 20 through 29, all counts to run consecutively;
3.    Five years on each count of gross sexual imposition, to run consecutively [with each other] and to run consecutively with the sentences in CR 508859-A.
4.    Five years of post-release control under OHIO REV. CODE § 2967.28; and
5.    Classified Petitioner as a Tier III offender (Docket No. 6-1, pp. 34, 35 of 423).

3.    THE DIRECT APPEAL.

Petitioner's criminal cases CR 508859-A and 518221-A were also consolidated on appeal.  On February 13, 2009, Petitioner perfected a notice of appeal in the Court of Appeals of Cuyahoga County, Ohio, Eighth Appellate District (Docket No. 6-1, p. 36 of 432).  In his brief filed on July 20, 2009, Petitioner asserted seven assignments of error:

1.    His state constitutional right to a grand jury indictment and state and federal constitutional rights to due process were violated when his indictment of gross sexual imposition omitted an element of the offense.
2.    His right to due process, a grand jury indictment and the notice of all essential elements for which he was charged were violated by the state's failure to include

5

a *mens rea* element in the indictment for the offense of rape.

3. Petitioner was denied a fair trial and notice when the state charged him with multiple identical and undifferentiated counts alleging offenses over an extended period of time.

4. The trial court erred in admitting prejudicial victim impact statements, allowing the prosecution to bolster the complaining witnesses' clams with prior inconsistent statements and admitting hearsay statements from the complaining witnesses.

5. Trial counsel's acts and omissions deprived Petitioner of the effective assistance of counsel.

6. Petitioner's consecutive sentences are contrary to law because the trial court failed to articulate findings and reasons necessary to justify the sentence imposed.

7. The trial court improperly considered Petitioner's decision to go to trial as a factor for imposing all maximum consecutive terms (Docket No. 6-1, pp. 38-39 of 423).

On August 12, 2010, the Court of Appeals affirmed in part, reversed in part and remanded the case to the trial court, finding specifically that:

1. This court has repeatedly held that gross sexual imposition involving a victim under the age of 13 is a strict liability offense and requires no precise state of mind (Docket No. 6-1, pp. 143-145 of 423).

2. The indictment for engaging in sexual conduct with a child under the age of 13 years is not defective for failing to specify a *mens rea* element because the offense is a strict liability one (Docket No. 6-1, pp. 145-146 of 423).

3. To the extent that Petitioner was attempting an appeal to challenge the indictment for insufficiency of notice, he waived it. Otherwise, the state did differentiate the counts at trial, which satisfies Petitioner's due process concerns. However, from the differentiated counts, the court was able to discern some merit to Petitioner's claims that the evidence was insufficient to support certain convictions. Accordingly the court vacated Counts 12, 14 through 19. Because Petitioner did not contend that the amendments changed either the identify or substance of the crimes charged and he did not cite any authority that would otherwise support a finding of error in this regard, the court did not err in permitting amendments of Counts 4-9 of the complaint (Docket No. 6-1, pp. 146-149 of 423).

4. Even if the victim impact evidence was admitted in error, Petitioner failed to show that there was some reasonable probability that the outcome would have been different but for the evidence. Petitioner's argument concerning the social worker testimony was without merit. The court has consistently held that a young rape victim's statements to social workers and medical personnel are admissible under OHIO EVID. R. 803(4) when made for purposes of medical diagnoses or

6

treatment (Docket No. 6-1, pp. 150-153 of 423).

5.  Petitioner was unable to show that counsel's decision to refrain from cross-examining the children witnesses was seriously flawed and deficient and that the result of his trial would have been different if defense counsel provided proper representation (Docket No. 6-1, pp. 153-155 of 423).

6.  *Foster*[3] did not prevent the trial court from imposing consecutive sentences; it merely took away the judge's duty to make findings before doing so.  The trial judge has the authority to impose consecutive sentences (Docket No. 6-1, pp. 155-156 of 423).

7.  There is nothing in the record that would support Petitioner's contention that the trial court imposed a sentence within the statutory range as punishment for exercising his right to appeal (Docket No. 6-1, pp. 156-157 of 423).

**4.    APPEAL TO THE SUPREME COURT OF OHIO.**

In the memorandum in support of jurisdiction filed on September 24, 2010, Petitioner

asserted seven propositions of law:

1.  Petitioner was denied a fair trial and notice when the state charged him with numerous identical offenses occurring over an extended period of time.

2.  The introduction and admission of inadmissible, improper and prejudicial evidence violated Petitioner's rights to due process and a fair trial.

3.  Trial counsel's acts and omissions deprived Petitioner of the effective assistance of legal counsel.

4.  Consecutive sentences are contrary to law and violate due process when the trial court imposes them without making and articulating the findings and reasons necessary to justify them.

5.  The trial court violates due process by imposing a longer prison sentence simply because Petitioner opted to take his case to trial.

6.  Petitioner's state constitutional right to a grand jury indictment and state and federal constitutional rights to due process were violated where the indictment for gross sexual imposition omits the element of the offense.

7.  Petitioner's state constitutional right to a grand jury indictment and state and federal constitutional rights to due process are violated where his indictment for the offense of rape omits the element of the offense (Docket No. 6-1, pp. 172-173 of 423).

---

[3]

The case referred to is *State v. Foster*, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N. E. 2d 470 (2006).

7

On December 15, 2010, the Supreme Court of Ohio accepted the appeal on propositions of law numbers 1, 4 and 6.  Pending resolution of proposition of law 1, the Court delayed the briefing of propositions of law 4 and 6 (Docket No. 6-1, p. 223 of 423).

In the merit brief filed on March 14, 2011, Petitioner asserted one proposition of law:

When the state's charging instrument alleges numerous identical offenses occurring over an extended period of time, it violates the accused's rights to notice and a fair trial while failing to protect against double jeopardy (Docket No. 6-1, p. 225 of 423).

The Office of the Ohio Public Defender filed a brief of *amicus curiae* on March 14, 2011, asserting four arguments:

1.    The due process rights of criminal Petitioners are protected by pre-trial differentiation.
2.    Pre-trial differentiation also benefits the prosecution and the court system.
3.    The due process rights of a criminal defendant would be protected by pretrial differentiation.
4.    Pre-trial differentiation would also benefit the prosecution and the court system (Docket No. 6-1, p. 291 of 423).

On May 2, 2011, the prosecuting attorney filed a merit brief in which the argument was made that the appeal should be dismissed as Petitioner committed a separate act against each of his victims which was delineated by the jury verdict and supported by the evidence (Docket No. 6-1, pp. 305 of 423).  The Franklin County prosecutor filed a brief of *amicus curiae* on May 2, 2011, in which he asserted that the indictment was not invalid for approximating the date of the offense where an exact date and time cannot be ascertained particularly where testimony differentiates between various sex acts (Docket No. 6-1, p. 349 of 423).

On October 11, 2011, the Supreme Court of Ohio's Chief Justice Maureen O'Connor determined that:

1.  Upon consideration of the appeal in the manner prescribed by law, Petitioner's proposition of law was dismissed, *sua sponte*, as having been improvidently accepted;

2.  As to proposition of law 4, the judgment of the court of appeals was affirmed on the authority of *State v. Hodge*, 128 Ohio St. 3d 1, 2010-Ohio-6320, 941 N. E. 2d 768.

3.  As to proposition of law 6, the judgment of the court of appeals was affirmed on the authority of *State v. Dunlap*, 129 Ohio St. 3d 461, 2011-Ohio-4111, 953 N.E. 2d. 816.

Chief Justice O'Connor ordered that a mandate be sent to the Court of Common Pleas for Cuyahoga County, Ohio, to carry this judgment into execution (Docket No. 6-1, p. 396 of 423).

**5.   PETITION TO VACATE AND SET ASIDE SENTENCE.**

On August 11, 2009, Petitioner, *pro se*, filed this motion, articulating five reasons that his conviction should be vacated:

1.  Trial counsel was ineffective for failing to challenge the DNA tests.
2.  The DNA evidence was inconclusive.
3.  Petitioner was convicted based on the testimony of Detective Thompson alone with no other witnesses or other professional expert DNA personnel.
4.  Petitioner's confession was inadmissible.
5.  The trial court's failure to suppress the confession and prevent its admissibility prejudiced Petitioner to such a degree that he was denied a fair trial and the equal protection under the law (Docket No. 6-1, pp. 398-401 of 423).

On September 16, 2009, Petitioner supplemented the record with additional facts, specifically:

1.  There were multiple witnesses who would have testified that P.S. and V.S. begged him to reunite with their mother.
2.  Petitioner purchased the Mortal Kombat® game but he placed it under Maria's custody and control.
3.  Maria's children occasionally hung up his coat and removed his work boots when he arrived home from work but they never undressed him.
4.  Maria vowed to get revenge on Petitioner because he left her to marry someone else.
5.  His trial counsel discovered all of this information but failed to use it at trial.
6.  His trial counsel was bias toward him because he is black and Maria and her children are Caucasian.
7.  He was prejudiced by local and national media coverage (Docket No. 6-1, pp.

405-407 of 423).

Judge McMonagle issued proposed findings of fact and conclusions of law on October 6, 2009, in which he concluded that Petitioner's petition was timely filed but he failed to support his petition with sufficient documentary evidence showing that he was entitled to a hearing or the relief requested (Docket No. 6-1, pp. 418-422 of 423).  Judge McMonagle denied the petition on January 12, 2010 (Docket No. 6-1, p. 423 of 423).

> 6.    PETITION FOR WRIT OF HABEAS CORPUS.

On October 12, 2012, Petitioner asserted the following ground for relief and its supplemental allegations:

> 1.    His rights to due process, notice and a fair trial were violated when the State charged him with multiple identical and undifferentiated counts alleging offenses over an extended period of time (Docket No. 1, p. 15 of 22).
>
>     a.    The evidence at trial failed to clarify the indictment (Docket No. 1, pp. 17-19 of 22).
>
>     b.    An amendment to the indictment post-trial, closing argument and jury instructions failed to remedy the indictment's vagueness (Docket No. 1, pp. 19-22 of 22).

### V.  ARE THERE ANY PROCEDURAL BARRIERS TO HABEAS REVIEW?

Before the undersigned Magistrate can review the merits of the Petition for Writ, a determination must be made as to whether Petitioner has overcome several procedural barriers. Procedural barriers such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, may operate to limit access to review on the merits of Petitioner's constitutional claims.  *See Daniels v. United States*, 121 S. Ct. 1578, 1582-1583 (2001).

**A.    THE STATUTE OF LIMITATIONS.**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), there is a one year statute of limitations that applies to the application of a writ of habeas corpus filed by a

person in custody pursuant to a state court.  *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S.Ct. 141 (2012) (*citing* 28 U.S.C. § 2244(d)(1)).  The statute of limitations typically begins to run from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A) (Thomson Reuters 2013).  The conclusion of direct review encompasses review by the United States Supreme Court.  *Lawrence v. Florida*, 127 S.Ct. 1029, 1082-1083 (2007).  The petitioner has 90 days to file a writ of certiorari to the United States Supreme Court.  *Id*. at 1083.

Here the statute of limitations is calculated from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  That date is January 11, 2012, the last date on which Petitioner could have sought review by the United States Supreme Court.  Petitioner properly filed the instant Petition for Writ of Habeas Corpus on October 12, 2012.  Clearly the expiration of the statute of limitations is not an impediment to habeas review of Petitioner's claim.

B.    PROCEDURAL DEFAULT STANDARD OF REVIEW.

Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition.  *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir.2013) (*See Lambrix v. Singletary*, 117 S.Ct. 1517, 1523 (1997) (noting that procedural default should "ordinarily" be considered before retroactivity)).  The procedural default rule is related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition.  *Id*. (See 28 U.S.C. § 2254(b), (c)).  In fact, a federal court will ordinarily not review an issue in a habeas corpus petition unless the petitioner has first exhausted the claim before the state court, as the state court should

11

normally have an opportunity to pass on the constitutional claim prior to federal habeas review. *White v. Mitchell*, 431 F.3d 517, 525 -526 (6th Cir. 2005) 28 U.S.C. § 2254(b); *citing Duckworth v. Serrano*, 102 S.Ct. 18, 19 (1981)).  A petitioner has exhausted his claim if he or she has presented the substance of the claim to the highest court in the state.  *Id.* (*citing Prather v. Rees*, 822 F.2d 1418, 1420 (6th Cir. 1987)).

Petitioner has consistently claimed that he was denied rights of due process and a fair trial where the State charged him with multiple, identical and undifferentiated counts alleging offenses over an extended period of time.  Petitioner instituted a jurisdictional appeal and the Supreme Court invited Petitioner to brief this issue.  Upon due consideration of the appeal in the manner prescribed by law, Petitioner's proposition of law was dismissed, *sua sponte*, as having been improvidently accepted.

Having alerted the highest court in the State of Ohio to the federal nature of his claims, this Court must consider Petitioner's sole ground for relief on it merits.  Petitioner's claim is subject to habeas review.

### VII.  HABEAS REVIEW STANDARD.

A timely filed application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim—

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Thomson Reuters 2013).

A decision is "contrary to" clearly established federal law when the state court arrives at a

conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Holder v. Palmer*, 588 F. 3d 328, 343 (6th Cir. 2009) (*citing Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)). A state court decision will be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. *Id.* (*citing Williams*, 120 S.Ct. at 1523) (emphasis added).

A decision is an unreasonable application of clearly established federal law if it identifies the correct principle of law but unreasonably applies it. *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) *cert. denied*, 122 S.Ct. 2635 (2002) (*See Williams v. Taylor, supra*, 120 S. Ct. at 1519). An unreasonable application of federal law is different from an incorrect application of federal law. *Id.* Under Section 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *Id.* Rather, that application must also be unreasonable. *Id.* (*citing Williams v. Taylor, supra*, 120 S.Ct. at 1521) (original emphasis)).

As a condition for obtaining habeas relief from the federal court, a state prisoner must show that the state court's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011). This bar is difficult to meet because "'habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2795, n.5 (1979)).

13

## VIII. DISCUSSION.

Petitioner's threshold claim is a challenge to the prosecutor's alleged failure to differentiate multiple instances of identical offenses occurring over an extended period of time. Petitioner contends that the failure to differentiate in the charging instrument deprived him of adequate notice of the charges against him.  In his ancillary claims, Petitioner argues that the evidence at trial failed to clarify the indictment and that neither the amendment to the indictment post-trial, closing argument nor jury instructions eliminated the indictment's vagueness.

### 1.     THE LAW

The Sixth Amendment, made applicable to the states by way of the Fourteenth Amendment, guarantees all criminal defendants in state prosecutions "to be informed of the nature and cause of the accusation."  *Coles v. Smith,* 2013 WL 474706 (N.D.Ohio 2013) (*citing Argersinger v. Hamlin*, 92 S.Ct. 2006, 2008 (1972)).  In fact, the Supreme Court found that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by the charge . . . are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."  *Id.* (*citing Cole v. Alabama*, 68 S.Ct. 514, 517-518 (1948)).  "Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure." *Id.* (*citing Lankford v. Idaho*, 111 S.Ct. 1723, 1732 (1991)).  Notice is sufficient when it enables the defendant "to identify the issues on which a decision may turn."  *Id.* (*citing Lankford*, 111 S. Ct. at 1732, n. 22).

### A.     PETITIONER'S RIGHTS TO DUE PROCESS.

Petitioner contends that he was charged with multiple identical and undifferentiated counts alleging offenses over an extended period of time and that the indictment was

14

inconsistent with the standards in *Russell v. United States*, 82 S.Ct. 1038, 1047 (1962)[4].  Upon review of the entire record, it is unrefuted that Petitioner was apprised of the alleged criminal conduct, the time period during which the acts occurred between September 2007 and March 2008, and the identity of the victims by their dates of birth.  The basic constitutional standard by which the sufficiency of the indictment is measured is whether the indictment informs the defendant of the nature and cause of the accusations against him.  The indictment in this case contains a plain, concise and definite written statement of the discernible facts that put him on notice of "what he was prepared to meet."  The Magistrate finds that the indictment was not impermissibly vague, rather, it was aligned with the United States Supreme Court precedent which requires that Petitioner be afforded notice of the nature and cause of the specific charges against him.

The bill of particulars identified the victims and explained in detail the bases for the nineteen distinct acts of unlawful sexual contact with Jane Doe I and Jane Doe II.  The State went to great lengths to differentiate the acts and the victims (Docket No. 6-1, p. 324 of 423).  The bill of particulars supplemented the properly filed indictment with sufficient facts to apprise Petitioner of the charges against him and gave him an opportunity to identify the issues on which his conviction could turn.

Furthermore, Petitioner admitted during interrogation that Jane Doe I and Jane Doe II were invited to observe him make love to Maria, that he performed cunnilingus on Jane Doe I

---

[4]

*Russell* emphasized two of the protections which the indictment is intended to guarantee, reflected in two criteria by which the sufficiency of an indictment is to be measured.  These criteria are, first, whether the indictment 'contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'' and, secondly, "in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'  82 S.Ct. at 1047 (citations omitted).

and Jane Doe II at least twice and that he attempted to have sexual intercourse with Jane Doe I at least once.  By his own admission, Petitioner was already informed of the substance and cause of the charges against him as well as the specific dates that the offenses occurred (Docket No. 6-5, pp. 139-143 of 171).

The Magistrate concludes that the Petitioner does not have a viable due process claim as his arguments fail to show that the state court decision finding the indictment sufficient did not show that it violated clearly established federal law or that it contradicted Supreme Court precedent.

B.    CLARIFICATION OF THE INDICTMENT.

Petitioner contends that the evidence at trial failed to clarify the indictment.  The Magistrate disagrees.  The following summary of the evidence adduced at trial clearly clarified whom Petitioner abused, how he abused his particular victim, where he abused his victims and generally when he abused them.

P.S. testified that on one occasion, Petitioner invited her into the room where he and Maria were naked.  He instructed P.S. to take off her underwear and lie down.  She complied and Petitioner digitally penetrated her vagina (Docket No. 6-3, pp. 219-220; 229 of 246).

Once when her mother went shopping, Petitioner laid P.S. on the bed and stimulated her private parts by applying some "burning stuff"(Docket No. 6-3, pp. 221-222 of 246).

On another occasion, P.S. recounted that she held his penis while Petitioner urinated. When he concluded, he took P.S. to her room and rubbed his penis on her private parts, causing pain.  During this encounter, Petitioner also performed cunnilingus (Docket No. 6-3, pp. 223-224 of 246).

To the best of her recollection, P.S. testified that Petitioner performed cunnilingus more

than two times and it was not always in the bedroom.  P.S. recalled that Petitioner "touched" her breasts and rubbed his private part against her buttocks twice in her [bedroom (Docket No. 6-2, pp. 224-226 of 246).

P. S. testified that Petitioner taught her and I.S. how to perform fellatio.  She did so at least twice while naked, once in the lower level of the house, close to the stairs and another time while in the bedroom (Docket No. 6-3, pp. 227-228 of 246).

Petitioner had a ritual when he came home from work.  Apparently he taught P.S. and I.S. to go upstairs and undress him by removing, in order, his shirt, bulletproof vest, pants and socks.  Once Petitioner was completely undressed, they played Mortal Kombat®.  During the course of playing the game, P.S. and I.S., would also undress themselves (Docket No. 6-3, pp. 231-233 of 246).

P.S. observed Petitioner go to I.S.'s bed and perform sexual acts with her.  I.S. showed little reaction (Docket No. 6-3, p. 235 of 246).

I.S. observed Petitioner perform the same illicit sexual acts on P.S.  She confirmed that Petitioner used the undressing ritual as foreplay to Mortal Kombat®.  She claimed that when playing this game, everyone, including her brothers, was naked (Docket No. 6-4, pp. 17-18 of 219).

I.S. recalled that she was occasionally awakened with a kiss on the lips from Petitioner. Petitioner inserted his penis in her vagina and rubbed her chest.  Apparently, I.S. was trained that when Petitioner was sitting on her bed in her bedroom, she was required to perform fellatio while naked (Docket No. 6-4, pp. 20-24 of 219).

I.S. explained that she and P.S. watched her mother and Petitioner have sex.  They were both naked at the time.  When their mother left the room, Petitioner rubbed their chests, backs

17

and buttocks.  Petitioner did not touch I.S. with his body parts at that time; however,  he did penetrate P.S.'s body part with his penis and his finger[5] (Docket No. 6-4, pp. 28-31 of 219).

I.S. confirmed that she and P.S. were required to hold Petitioner's penis while he urinated.  I.S. was naked when holding his penis (Docket No. 6-4, pp. 32-33 of 219).

V.S. and T.S. corroborated the testimony of P.S. and I.S. that the family played Mortal Kombat® in the nude.  V.S. observed Petitioner "licking all of the girls' private parts," referring to his mother, P.S. and I.S.  T.S. observed Petitioner "touching the girls' private parts."  V.S. stated that Petitioner grabbed his private part and threatened that he could touch it anytime he wanted.  T.S. claims that Petitioner just rubbed his private parts but he also observed Petitioner touch V.S.'s private parts.  V.S. further described the time the family took a communal bath with Petitioner (Docket No. 6-4, pp. 71, 77-81; 107-109; 110 of 219).

The testimony of P.S., I.S., V.S. and T.S. was generally consistent and it clarified the indictment.  Of course there may have been minor conflicts in the details.  For instance, P.S. and I.S. differed on how the undressing ritual was performed on Petitioner.  However, P. S., I.S., V.S. and T.S. concurred that this ritual was foreplay to getting naked and playing Mortal Kombat®.  This evidence adduced at trial was definitely sufficient to clarify the indictment.

C.    THE AMENDMENT TO THE INDICTMENT POST-TRIAL, CLOSING ARGUMENT AND JURY INSTRUCTIONS.

First, Petitioner argues that the amendment to counts four to nine which reflect that P.S. rather than I.S. was a victim, altered the charges against him.  Under OHIO CRIM. R. 7(D), it is within the province of the trial court at any time before, during or **after** the trial to amend the

---

[5]

The Magistrate acknowledges that this testimony contradicts the testimony given by I.S. previously and that this is clearly the basis for which the appellate court vacated seven claims involving I.S.

indictment to conform to any variance in the evidence, provided no change was made in the name or identity of the crime charged.  Here, the only change in the amendments was that the victim's identity had changed.  No change was made in the nature of the facts or the name or identity of the crime charged.

Second, Petitioner asserts instances of prosecutorial misconduct, including failing to differentiate the charges in the indictment, properly differentiate the acts for the jurors and propose jury instructions that enabled the jury to differentiate the acts.

Under the relevant Supreme Court precedent, prosecutorial misconduct is grounds for reversal if that conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008) *cert. denied*, 130 S.Ct. 1687 (2010) (*citing Darden v. Wainwright*, 106 S.Ct. 2464, 2471 (1986) (*quoting Donnelly v. DeChristoforo*, 94 S.Ct. 1868, 1871 (1974)).  The appropriate standard for review on a claim of prosecutorial misconduct alleged in a petition for a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id.* (*citing Donnelly*, 94 S.Ct. at 1871).

Persuaded that the exigencies of child abuse cases necessitate considerable latitude in the construction of criminal charges, the Magistrate finds that the prosecutor did not abuse this wide latitude by piling on multiple identical counts.  The evidence shows that the prosecutor was convinced that she could distinguish through witness testimony, multiple identifiable offenses[6]. The prosecutor presented substantial evidence of ongoing abuse, against which Petitioner had

---

[6]

Attached to the Return, Respondent provided a table in which the prosecutor distinguished each count of rape by the victim, the illicit act performed by Petitioner, where he performed it and the corroborating witness (Docket No. 6-1, p. 324 of 423).

notice and the opportunity to defend.  Assuming *arguendo* that the prosecutor's charging was deficient and that Petitioner was in fact charged with multiple, identical and undifferentiated counts of rape, the verdicts will not be disturbed because the appellate court was able to discern the evidence that supports each individual conviction and vacated seven of the nineteen rape offenses.   Petitioner has failed to demonstrate constitutional error sufficient to render the remaining twelve counts invalid.

      With specific regard to a habeas challenge to jury instructions, a petitioner has a particularly heavy burden:

> In a habeas proceeding, allegedly improper jury instructions must be shown to have infected the accused's trial to such a degree as to constitute a clear violation of due process.  The petitioner must show more than that the instructions are undesirable, erroneous, or u

*Davie v. Mitchell,* 291 F.Supp.2d 573, 607 (N.D.Ohio,2003) *aff'd* 547 F. 3d 297 (*citing Wood v. Marshall,* 790 F.2d 548, 551 (6th Cir.1986); *see also Coe v. Bell*, 161 F.3d 320, 329 (6th Cir.1998).

      The challenged jury instructions cannot be judged in isolation but must be considered in the context of the entire jury charge.  *Hardaway v. Withrow,* 305 F.3d 558, 565 (6th Cir. 2002) *cert. denied*, 123 S.Ct. 2078 (2003)   A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.  *Id.* (*citing Fama v. Commissioner of Correctional Services*, 69 F.Supp.2d 388, 397 (E.D.N.Y.1999); *aff'd* 235 F.3d 804 (2nd Cir.2000)).

      Petitioner does not identify which of the jury instructions he believes were provided to clarify the indictment's vagueness.  Even without identifying the particular jury instruction, the

20

Magistrate finds that Petitioner's argument lacks merit as he failed to establish that the jury instructions as a whole were ambiguous or weak to the extent that they rendered the entire trial fundamentally unfair in this regard; that the jury applied the instructions improperly; or that the jury instructions designated to clarify the indictment's vagueness were so clearly erroneous that they adversely affected the verdict.

Third, Petitioner criticizes the prosecutor's use of a chart that was not conveyed until closing argument and the jury was preparing to deliberate.

A prosecutor is allowed "to argue reasonable inferences from the evidence." *Macias v. Makowski,* 291 F.3d 447, 452 (6th Cir. 2002) (*citing Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir.2000)).  The prosecutor is not allowed to misstate the evidence.  *Id.* (*citing United States v. Carter*, 236 F.3d 777, 784 (2001)).  In examining alleged prosecutorial misconduct on habeas review, this Court can only provide relief "if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Washington v. Hofbauer*, 228 F.3d 689, 708 (6th Cir. 2000) (*citing Caldwell v. Russell*, 181 F.3d 731, 736) (*citing Donnelly*, *supra*, 94 S.Ct. at 1871-1873)).  In assessing whether the alleged misconduct amounts to a constitutional deprivation, the court must view the totality of the circumstances. *Id.* (*See Hayton v. Egeler,* 555 F.2d 599, 604 (6th Cir.1977) *cert. denied*, 98 S. Ct. 527 (1977)).

The subject chart was not admitted into evidence.  The prosecutor's use was limited to compartmentalizing the enormous amount of testimony adduced during the trial and to clarify the indictment's alleged vagueness.  The chart reflected the opinion of the prosecutor as to what the evidence showed.  It was not based on irrelevant matters or highly prejudicial comments.

The Magistrate is not persuaded that the use of the chart was so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation. Neither is the Magistrate persuaded that without the chart there was a reasonable probability that the outcome of the trial would have been different. .

### IX. CONCLUSION

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus, deny the certificate of appealability and terminate the referral to the undersigned Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Date: August 12, 2013

22

## X. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.